UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
CRICUT, INC.,                                                 :

                               Plaintiff,    :

                 -against-                          :

APA TECHNOLOGY LTD. CO., SHENZHEN   :
NICAPA TECHNOLOGY CO. LTD, SHENZHEN :
HAOYA TECHNOLOGY CO. LTD, HONG KONG :
NICAPA TECHNOLOGY LTD., XIAOXIN CHEN, :
COMPANIES XYZ NOS. 1-25, and JOHN/JANE :
DOES NOS. 1-25,                              :

                              Defendants.   :
------------------------------------------------------------------- x

ORDER CERTIFYING FACTS

19-CV-5380 (RPK)(MMH)

**MARCIA M. HENRY**, United States Magistrate Judge:

In this copyright and trademark infringement action, Plaintiff Cricut, Inc. move the Court to hold Defendants APA Technology Ltd. Co. (also d/b/a Nicapa Technology Ltd., Nicapa Ltd. and/or Nicapa), Shenzhen Nicapa Technology Co., Ltd., Shenzhen Haoya Technology Co. Ltd., Hong Kong Nicapa Technology Ltd., Xiaoxin Chen (a/k/a Care Chen), in civil contempt for violation of a Consent Judgment entered by the Honorable Rachel P. Kovner on January 14, 2021. (*See generally* Pl. Mot., ECF No. 52.)[1] Judge Kovner referred the motion for decision. For the reasons set forth below, the Court certifies the following facts and orders Defendants to appear at a date certain before Judge Kovner to show cause why they should not be held in contempt.

---

[1] All citations to documents filed on ECF are to the ECF document number (*i.e.*, "ECF No. ___") and pagination "___ of ___" in the ECF header unless otherwise noted.

I. **BACKGROUND**

Cricut is a Utah corporation with a principal place of business in South Jordan, Utah that develops manufactures, markets, and sells crafting and do-it-yourself ("DIY") products and accessories worldwide, for which it has protected trade dress, trademarks, and copyrights. (2d Am. Compl. ("SAC"), ECF No. 27 ¶¶ 9, 41, 56, 60; Consent Judgmt., ECF No. 46 ¶ 2–3, 5, 18, 22.) APA is also a U.S.-based company that manufactures, distributes, and sells crafting and DIY products and accessories, doing business under various names that include the term "Nicapa." (SAC, ECF No. 27 ¶ 10.) Shenzhen Nicapa and Shenzhen Haoya are China-based sales limited liability companies that interface with manufacturers in China to produce APA's products and to sell inventory through online storefronts. (*Id.* ¶¶ 11–12.) Hong Kong Nicapa manages financial transactions to support APA, Shenzhen Nicapa, and Shenzhen Haoya. (*Id.* ¶ 13.) Chen, an individual, who resides in China, owns, operates, and controls APA, Shenzhen Nicapa, Shenzhen Haoya, and Hong Kong Nicapa and owns various trademark registrations. (*Id.* ¶¶ 14–16.)

In September 2019, Cricut sued APA and unidentified companies, alleging claims for copyright infringement, trade dress infringement, trademark infringement, trademark dilution, unfair competition, and false advertising in violation of the Copyright Act, 17 U.S.C. §§ 101 *et seq.*, the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, and New York statutory and common law. (Compl., ECF No. 1.) Cricut amended the Complaint twice, ultimately asserting the same violations against Shenzhen Nicapa, Shenzhen Haoya, Hong Kong Nicapa, and Chen, and a petition for cancellation of trademark registrations against Chen. (SAC, ECF No. 27.) Defendants answered the Second Amended Complaint on July 6, 2020. (Answer to SAC, ECF No. 36.)

2

The parties agreed to resolve the action by entering into a Consent Judgment pursuant to Federal Rule of Civil Procedure 58, which the Court ordered on January 14, 2021. (Consent Judgmt., ECF No. 46.) The Court retained jurisdiction over the enforcement of the Consent Judgment. (*Id.* ¶ 70.)

On January 26, 2023, Cricut moved to have Defendants held in civil contempt for violating the Consent Judgment and requested damages and attorneys' fees. (Pl. Mem., ECF No. 52-1.)[2] Defendants opposed the motion, and Cricut replied. (Def. Opp., ECF No. 53; Pl. Reply, ECF No. 54.) The motion was referred to the undersigned. (Order Referring Mot. Apr. 17, 2023.) In May 2023, Cricut requested leave to supplement its motion with additional evidence of Defendants' violations. (Pl. Sur-Reply, ECF No. 55.) Defendants then filed a sur-sur-reply, purporting to provide additional evidentiary support for their arguments or, in the alternative, seeking discovery. (Def. Sur-Sur-Reply, ECF No. ECF No. 56.)

## II.  LEGAL STANDARDS

### A.  Magistrate Judges' Authority

"Federal magistrate judges are authorized to exercise contempt authority in certain limited circumstances." *Loc. 807 Lab. Mgmt. Pension Fund v. City Elevator Corp.*, No. 19-

---

[2] Cricut's motion includes a memorandum of law ("Pl. Mem.", ECF No. 52-1), the declaration of Paul J. Reilly ("Reilly Decl.", ECF No. 52-2), that declaration's eleven exhibits ("Reilly Decl. Ex. ___", ECF Nos. 52-3 through 52-13), a proposed order ("Proposed Order", ECF No. 52-14), Cricut's reply ("Pl. Reply," ECF No. 54), and a supplemental declaration of Paul J. Reilly ("Supp. Reilly Decl.", ECF No. 54-1), Cricut's sur-reply ("Pl. Sur-Reply," ECF No. 55), a second supplemental declaration of Paul J. Reilly ("2d. Supp. Reilly Decl.", ECF No. 55-1), and that declarations' four exhibits ("2d. Supp. Reilly Decl. Ex. ___", ECF Nos. 55-2 through 55-5.) Defendants' opposition papers include a memorandum of law ("Def. Opp.", ECF No. 53), the declaration of Xiaoxin Chen ("Chen Decl.", ECF No. 53-1), Defendants' sur-sur-reply ("Def. Sur-Sur-Reply," ECF No. 56), a supplemental declaration of Xiaoxin Chen ("Supp. Chen Decl.", ECF No. 56-1), and a declaration of Tong Jin ("Jin Decl.", ECF No. 56-2).

CV-4688 (ENV)(CLP), 2021 WL 7906554, at *2 (E.D.N.Y. Sept. 17, 2021), *adopted by* Order Adopting R. & R., *Loc. 807 Lab. Mgmt. Pension Fund v. City Elevator Corp.*, No. 19-CV-4688 (ENV) (E.D.N.Y. Mar. 4, 2022) (scheduling Order to Show Cause hearing). "Here, as in other instances in which an act constituting civil contempt occurs in a proceeding to which a magistrate judge has been designated, the magistrate judge must instead

> certify the facts to a district judge and may serve or cause to be served, upon any person whose behavior is brought into question under this paragraph, an order requiring such person to appear before a district judge upon a day certain to show cause why that person should not be adjudged in contempt by reason of the facts so certified.

*Sec. & Exch. Comm'n v. CKB168 Holdings, Ltd.*, No. 13-CV-5584 (RRM), 2016 WL 11796951, at *3 (E.D.N.Y. Feb. 12, 2016) (quoting 28 U.S.C. § 636(e)(6)(B)), *adopted by* 2016 WL 11796982 (E.D.N.Y. Sept. 28, 2016).

"In certifying the facts under section 636(e), the magistrate judge's role is to determine whether the moving party can adduce sufficient evidence to establish a *prima facie* case of contempt." *CKB168 Holdings, Ltd.*, 2016 WL 11796951, at *3 (cleaned up). "'The district court, upon certification of the facts supporting a finding of contempt, is then required to conduct a *de novo* hearing at which issues of fact and credibility determinations are to be made.'" *Gov't Emps. Ins. Co. v. Boatswain*, No. 21-CV-1702 (DG)(LB), 2023 WL 2969283, at *1 (E.D.N.Y. Jan. 5, 2023) (quoting *Bowens v. Atl. Maint. Corp.*, 546 F. Supp. 2d 55, 71 (E.D.N.Y. 2008)), *adopted by* 2023 WL 4557667 (E.D.N.Y. July 17, 2023). "The determination of whether the conduct constitutes contempt and, if so, what sanctions are appropriate are left to the discretion of the district court." *JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*, No. 03-CV-562 (JGK)(AJP), 2006 WL 1148110, at *1 (S.D.N.Y. Apr. 28, 2006) (citing 28 U.S.C. § 636(e)).

### B. Civil Contempt

"'A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as . . . [d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command.'" 18 U.S.C. § 401, 401(3). "A 'court's interest in protecting the integrity of [a consent] decree justifies any reasonable action taken by the court to secure compliance.'" *CBS Broad. Inc. v. FilmOn.com, Inc.*, 814 F.3d 91, 101 (2d Cir. 2016) (quoting *NLRB v. Local 3, Int'l Bhd. of Elect. Workers*, 471 F.3d 399, 406 (2d Cir. 2006)). "This 'inherent power' to enforce a consent judgment extends 'beyond the remedial contractual terms agreed upon by the parties.'" *CBS Broad. Inc.*, 814 F.3d at 101 (quoting *Local 3*, 471 F.3d at 406).

"A civil contempt order is nevertheless a 'potent weapon . . . that is inappropriate if there is a fair ground of doubt as to the wrongfulness of the defendant's conduct . . . .'" *CKB168 Holdings, Ltd.*, 2016 WL 11796951, at *4 (quoting *Latino Officers Ass'n City of N.Y., Inc. v. City of New York*, 558 F.3d 159, 164 (2d Cir. 2009)). "To demonstrate contempt, a movant must establish that (1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *Next Invs., LLC v. Bank of China*, 12 F.4th 119, 128 (2d Cir. 2021) (cleaned up). "It is not necessary for the moving party to show that the violating party disobeyed the court's order willfully." *Sportco, Inc. v. TRT Tactical, LLC*, No. 14-CV-6044 (JG) (GRB), 2015 WL 3915618, at *1 (E.D.N.Y. June 25, 2015) (citation omitted).

### III. DISCUSSION

#### A. The Terms of the Consent Judgment

By its terms, the Consent Judgment establishes the scope of Cricut's intellectual property. Specifically, Cricut owns trade dress rights in the product configurations and/or packaging for its Basic Tool Set and the individual tools therein. (Consent Judgmt., ECF No. 46 ¶ 18.) Cricut is also the owner of the trademarks CRICUT, EASYPRESS, CRICUT EASYPRESS, CRICUT MAKER, EXPLORE, CRICUT EXPLORE, and DESIGN SPACE and variants thereof at common law and also owns federal trademark applications and/or registrations for certain of these marks. (*Id.* ¶¶ 22.) Cricut owns copyrights for works that appear on the packaging for its products, including the Basic Tools Set, EASYPRESS heat transfer device and EASYPRESS Mat Product, and EASYPRESS booklet. (*Id.* ¶¶ 3, 5.)

The Consent Judgment also permanently enjoins and restrains Defendants from, *inter alia*:

> (a) using, copying, displaying, publishing, importing, distributing, creating derivative works from and/or otherwise infringing or violating any of Cricut's Copyrighted Works, including, the copyrights as described above and in the Second Amended Complaint;
>
> (b) any infringing use, in any manner or form, including, but not limited to, in or on packaging, products, marketing materials, advertisements, promotional materials, web sites, social media, keywords, digital ads and search-engine-optimization (SEO), of the CRICUT Marks, including, CRICUT, EASYPRESS, CRICUT EASYPRESS, CRICUT MAKER, EXPLORE, CRICUT EXPLORE and DESIGN SPACE, or any other trade name, trademark, service mark, domain name, designation, symbol or device containing CRICUT, EASYPRESS, CRICUT EASYPRESS, CRICUT MAKER, EXPLORE, CRICUT EXPLORE or DESIGN SPACE, or any variant or colorable imitations thereof; for avoidance of doubt, Defendants may make fair descriptive use of Cricut's word marks only as set forth in the attached Exhibit 7,[3] but Defendants'

---

[3] The Consent Judgment incorporates by reference seven exhibits which were attached to the parties' joint motion to approve the Consent Judgment. (*See* ECF No. 41.) The seven exhibits

uses of the CRICUT Marks which are the subject of this matter and are shown in Exhibit 6[4] attached hereto are not in compliance with Exhibit 7; Further, in a trademark or copyright case, the language of an injunction may itself incorporate examples of marks or designs that would be covered by its prohibitions, thereby providing guidance as to scope of the order.

(c) any and all use, in any manner or form, of trade dress that embodies or is confusingly similar to or a colorable imitation of the Defendants' Violative Works, the Cricut Trade Dress, including, Cricut's packaging and product configuration trade dress embodied in its products, including, but not limited to, its Basic Tool Set and/or the individual tools themselves, EASYPRESS heat transfer device, Deep Cut Housing and Blade, EASYPRESS Mat, Knife Blade + Drive Housing, Applicator & Remover Set and/or the individual tools themselves, Scoring Stylus, Ultimate Fine Point Pen Set, and/or EXPLORE cutting machines;

(Consent Judgmt., ECF No. 46 ¶ 54(b).) The Consent Judgment also includes a carveout for Defendants' "fair descriptive use of Cricut's word marks only as set forth in the attached Exhibit 7." (*Id.*) In turn, Exhibit 7, entitled "Parameters of Fair Descriptive Uses" (the "Parameters") states, in relevant part, that Defendant may make a descriptive statement, such as:

in the product specification section on Amazon (referred to as the "Key Features (bullet points)" section of an Amazon listing), and nowhere else, meaning, the statement shall never be used or appear in any of the following: (a) primary product title, listing name or product identifier (e.g., "Title" section of Amazon listings), (b) brand name of the product (e.g., "Brand" section of Amazon listings), (c) manufacturer's name (e.g., "Manufacturer" section of Amazon listings), (d) secondary product description (e.g., "Product Description" section of Amazon listings), (e) in any images for the product (e.g., "Images" section of an Amazon listing), (f) web page header, tab or link, or (g) any other online platform.

---

include, *inter alia*, photographs of Cricut's proprietary product packaging and product configuration trade dress, examples of Defendants' "violative works," and parameters for Defendants' fair descriptive use of Cricut's marks. (*See* ECF Nos. 41-1 through 41-8.)

[4] "Defendants' Violative Works" include the "[r]epresentative examples of Defendants' infringement, misappropriation and violation of Cricut's Copyrighted Works, Cricut Trade Dress and CRICUT Marks, reverse passing off, and false advertising" shown in Exhibit 6 to the Consent Judgment (ECF No. 41-7). (*See* Consent Judgmt., ECF No. 46 ¶ 37.)

(ECF No. 41-8 at 1 ¶ 2(c).)

The Consent Judgment further includes a notice-and-cure provision in paragraph 66. Pursuant to this provision, if Defendants violate or breach any term or condition of the Consent Judgment, they have 30 days to cure the breach from the date their counsel receives notices from Circuit, but only for the first and second violations—no notice is required for the third or subsequent violations. (Consent Judgmt., ECF No. 46 ¶ 66.) If Defendants do not remedy either the first or second violation within 30 days after notice, or if they violate the Consent Judgment more than twice, then Defendants are subject to liquidated damages of $500,000 payable to Cricut, among other penalties. (*Id.*)[5]

### B. Defendants' Alleged Violations of the Consent Judgment

Cricut claims that Defendants violated the Consent Judgment at least three times. (Pl. Mem., ECF No. 52-1 at 8–17; Pl. Sur-Reply, ECF No. 55 at 2–3.) First, by letter dated March 24, 2022 (the "March 2022 Notification"), Cricut's counsel notified defense counsel that Defendants continued to infringe Cricut's intellectual property, in violation of the Consent Judgment, because they displayed CRICUT's marks on Defendants' website, including reference to a "Cricut Cutting Mat" and related mentions of "Cricut." (Reilly Decl. Ex. 1, ECF No. 52-3.) Defense counsel responded by email on March 30, 2022, stating that he believed Defendants had deleted all uses of the Cricut marks from their website, and that the references were due to new employees who were unaware of the Consent Judgment. (Reilly Decl. Ex. 2, ECF No. 52-4.)

---

[5] In March and April 2021, Defendants filed two declarations of compliance, stating that they had fully complied with all the terms of the Consent Judgment. (ECF Nos. 47–48.)

8

Second, by letter dated May 10, 2022 (the "May 20, 2022 Notification"), Cricut's counsel notified defense counsel that Defendants again violated the Consent Judgment because Defendants continued to use Cricut's marks in the title of the product on their website on Alibaba, a third-party online retailer. (Reilly Decl. Ex. 3, ECF No. 52-5.) In email correspondence on June 2, 2022, Cricut's counsel notified defense counsel that Defendants' product pages on Alibaba still had not been fixed to correct the violations of the Consent Judgment. (Reilly Decl. Ex. 4, ECF No. 52-6.) Defense counsel responded on June 6, 2022, stating that he was told that Defendants had made the requested corrections. (Reilly Decl. Ex. 5, ECF No. 52-7.) On June 9, 2022, Cricut's counsel informed defense counsel that the "CRICUT" mark still appeared on Alibaba websites used by Defendants, including in the titles and product descriptions, and this use violated the Parameters' online platform provision. (Reilly Decl. Ex. 6, ECF No. 52-8.) Defense counsel questioned whether the online platform provision prevented Defendants from using the "CRICUT" mark on other platforms besides Amazon. (Reilly Decl. Ex. 11, ECF No. 52-13 at 3.) Cricut's counsel disagreed by email on June 13, 2022. (*Id.* at 2.)

Third, between November and December 2022, Defendants continued to infringe on Cricut's marks by displaying them on their website and on third parties Alibaba and Aliexpress's websites. (Reilly Supp. Decl., ECF No. 54-1 ¶¶ 3–4; Reilly Decl. Exs. 7–10, ECF Nos. 52-9 through 52-12.).

Then, in May 2023, four months after filing of the instant motion for contempt, Cricut contends that Defendants used the "CRICUT" mark and protected trade dress on websites Tradewheel.com and aaprintsupplyco.com in a manner that exceeded the Parameters. (Pl., Sur-Reply, ECF No. 55 at 2–3.)

9

### C. *Prima Facie* Case of Contempt

Defendants oppose Cricut's motion, stating that the Consent Judgment is ambiguous (Def. Opp., ECF No. 53 at 8–10), that Cricut fails to show any non-compliance of the Consent Judgment (*Id.* at 10–13), and that Defendants have been reasonably diligent in complying with the Consent Judgment. (*Id.* at 13.) Moreover, in response to Cricut asserting that Defendants continued to violate the Consent Judgment since the filing of the instant motion, Defendants contend that they do not control listings on the online platforms Tradewheel.com and aaprintsupplyco.com. (Def. Sur-Sur Reply, ECF No. 56 at 1–3.)

#### 1. Clear and Unambiguous Terms

"An injunction is sufficiently clear and unambiguous if it leaves 'no doubt in the minds of those to whom it was addressed . . . precisely what acts are forbidden.'" *CBS Broad. Inc.*, 814 F.3d at 98 (quoting *Drywall Tapers & Pointers v. Local 530*, 889 F.2d 389, 395 (2d Cir.1989)). "Thus, unless the parties can ascertain from the four corners of the order precisely what acts are forbidden, the order cannot form the basis for contempt." *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 143 (2d Cir. 2014) (cleaned up); *see also GMA Accessories, Inc. v. Eminent, Inc.*, No. 07-CV-3219 (LTS), 2008 WL 2355826, at *3 (S.D.N.Y. May 29, 2008) ("For an injunction to be 'clear and unambiguous' in this context, it need only be 'specific and definite enough to apprise those within its scope of the conduct that is being proscribed.'").

Here, the Consent Judgment is clear that Defendants may not use Cricut's intellectual property on any platform, with a limited exception for fair use. The Consent Judgment, which Defendants agreed and consented to, permanently enjoined Defendants from "any infringing use, in any manner or form, including, but not limited to, in or on packaging, products, marketing materials, advertisements, promotional materials, *web sites*, social media,

10

keywords, digital ads and search-engine-optimization (SEO), of the CRICUT Marks[.]" (Consent Judgmt., ECF No. 46 ¶ 54(b) (emphasis added).) The Parameters provide some relief from this injunction, but only when Defendants' descriptive statement is "in the product specification section on Amazon (referred to as the 'Key Features (bullet points)' section of an Amazon listing), and *nowhere else*." (Consent Judgmt. Ex. 7, ECF No. 41-8 at 1 (emphasis added).) The Parameters further narrow this exception by enumerating the circumstances or locations where Defendants' descriptive statement may *not* be used or appear, including, *inter alia*, "(g) any other online platform." (*Id.*)

Further, in a trademark or copyright case, the language of an injunction may itself incorporate examples of marks or designs that would be covered by its prohibitions, thereby providing guidance as to scope of the order. *GMA Accessories, Inc.*, 2008 WL 2355826, at *3. The Consent Judgment at issue does just that. It provides guidance as to the scope of the order through incorporating examples of marks or designs that would be covered by the prohibited acts, including an exhibit that illustrates Defendants' Violative Works. (*See* Consent Judgmt. Ex. 6, ECF No. 41-7.)

Attempting to sidestep this issue, Defendants asserts that the term "past infringement" in paragraph 66 is ambiguous for being undefined and, therefore, the liquidated damages clause is unenforceable. (Def. Mem., ECF No. 53 at 10.) But Defendants' argument is a red herring. At this stage of the contempt proceedings, the Court is not determining the scope or extent of any potential damages resulting from violations of the Consent Judgment. *CKB168 Holdings, Ltd.*, 2016 WL 11796951, at *3 ("In certifying the facts under section 636(e), the magistrate judge's role is to determine whether the moving party can adduce sufficient evidence to establish a *prima facie* case of contempt.") (cleaned up). Instead, the key issue is whether the

Consent Judgment informs a party "precisely what acts are forbidden." *CBS Broad. Inc.*, 814 F.3d at 98. Considering that Defendants do not claim that the Consent Judgment fails to inform them "precisely what acts are forbidden[,]" the instant Consent Judgment cannot be said to be ambiguous, as Defendants contend. *Id*.

In sum, the Consent Judgment unambiguously covers Cricut's intellectual property and makes clear what acts are forbidden, including that Defendants may not infringe Cricut's intellectual property. Therefore, the terms of the Consent Judgment are clear and unambiguous. *GMA Accessories, Inc.*, 2008 WL 2355826, at *4.

### 2. Clear and Convincing Evidence of Violations

"'In the context of civil contempt, the clear and convincing standard requires a quantum of proof adequate to demonstrate a reasonable certainty that a violation occurred.'" *MAS Wholesale Holdings LLC v. NW Rosedale Inc.*, No. 19-CV-1294 (PKC)(VMS), 2021 WL 1946380, at *5 (E.D.N.Y. May 14, 2021) (quoting *Levin v. Tiber Holding Corp.*, 277 F.3d 243, 250 (2d Cir. 2002), *adhered to on reconsideration*, 2021 WL 3080355 (E.D.N.Y. July 21, 2021)).

Cricut meets that standard here for the violations stated in its moving papers. First, Defendants used Cricut's marks on their website, as stated in the March 2022 notification. (Reilly Decl. Ex. 1, ECF No. 52-3; Chen Decl., ECF No. 53-1 ¶ 5.) The fact that Defendants deleted all references to Cricut's marks within seven days of notice does not change that the marks were still present after the Consent Judgment was entered. Second, as stated in the May 2022 Notification, Defendants used Cricut's intellectual property on Alibaba's website. (Reilly Decl. Ex. 3, ECF No. 52-5; Chen Decl., ECF No. 53-1 ¶¶ 6–7.) Months later, Defendants published materials from Cricut's EASYPRESS manual on their website, which

violated Cricut's registered copyright. (Reilly Decl., ECF No. 52-2 ¶¶ 9–10; Reilly Decl. Exs. 7–8, ECF No. 52-9 through 52-10; Chen Decl., ECF No. 53-1 ¶ 8.) In each of these instances, the evidence is clear that Defendants directly controlled, or was able to communicate with those who did control, the online platforms were the alleged infringement occurred. Defendants concede that "there were limited isolated incidents" and "mistake[s]" regarding their compliance with the Consent Judgment. (Def. Opp., ECF No. 53 at 13.)

The Court is less convinced by the evidence of the alleged infringing posts on Tradewheel.com and aaprintsupplyco.com. *See CKB168 Holdings, Ltd.*, 2016 WL 11796951, at *9. Defendants aver in a sworn declaration that they did not have any involvement with or connection to the placement of the infringing works on these platforms or to statements about Cricut's products on those website. (*See* Supp. Chen Decl., ECF No. 56-1 ¶¶ 4–5.) Unlike the three earlier instances of alleged infringement, it is unclear that Defendants have the same proximity to or control over these platforms. The Court therefore declines to find that Cricut met its burden with respect to the alleged use of its intellectual property on Tradewheel.com and aaprintsupplyco.com, as described in its sur-reply.

Accordingly, the Court finds that there is clear and convincing evidence that Defendants improperly infringed on Cricut's marks as described in the March 2022 Notification and the May 2022 Notification, and by publishing Cricut's EASYPRESS manual on their website. *Sportco, Inc.*, 2015 WL 3915618, at *2.

### 3.     Diligent Compliance

"Reasonable diligence, at the very least, requires a party to develop reasonably effective methods of compliance." *Aquavit Pharms., Inc. v. U-Bio Med, Inc.*, No. 19-CV-3351 (VEC), 2020 WL 1900502, at *8 (S.D.N.Y. Apr. 17, 2020) (cleaned up). "A party does not act with

reasonable diligence in obeying a court order if it 'complied reluctantly' or 'after a contempt motion had been filed.'" *New Falls Corp. v. Soni Holdings, LLC*, No. 19-CV-449 (HG)(LGD), 2022 WL 4357410, at *3 (E.D.N.Y. Sept. 20, 2022) (quoting *E.E.O.C. v. Local 638*, 81 F.3d 1162, 1176 (2d Cir. 1996)).

Here, the record shows that Defendants have not diligently attempted in a reasonable manner to comply with the Consent Judgment. Defendants assert that they dedicated resources to comply with the Consent Judgment. For example, the parties settled the case with the Consent Judgment, Defendants established a legal department to monitor all intellectual property related matters. (Chen Decl., ECF No. 53-1 ¶ 11.) That legal department audits their design and sales departments on the 15th of each month to eliminate potential infringing risks. (*Id.*) However the record shows that the Defendants' efforts have not been "reasonably effective[,]" as there have been multiple violations of the Consent Judgment since its entry. *Aquavit Pharms.*, 2020 WL 1900502, at *8. As noted, Defendants concede that "there were limited isolated incidents" and "mistake[s]" regarding their compliance with the Consent Judgment. (Def. Opp., ECF No. 53 at 13.) With respect to the first alleged violation, Defendants argue that it "was an inadvertent mistake and promptly corrected by Defendants." (*Id.* at 11.) As to the second alleged violation, Defendants represent that "Defendants promptly removed all references to [Cricut's] marks in their listings on the Alibaba platform" after the parties clarified the requirements in the Consent Judgment. (*Id.* at 12.) Regarding the third alleged violation, Defendants assert that Cricut's "copyright accidentally showed up on Defendants' official website because of a technical glitch." (*Id.* at 13.) Collectively, these demonstrate lack of diligence. Additionally, the Chen declaration is devoid of any actions that the legal department took to "eliminate potential infringing risk." (*See generally* Chen Decl.,

ECF No. 53-1.)  For example, Defendants present no evidence that they informed their third-party vendor, who controls their website, that all content on that website was subject to the Consent Judgment, a basic tenet of any risk management or compliance program.  Instead, the Defendants appear to take "a reactive approach towards compliance" that required "prompting from Plaintiff."  *Aquavit Pharms.*, 2020 WL 1900502, at *9.  The Court cannot conclude that Defendants have acted with reasonable diligence when their infringing activities cease only after counsel "complained of the violative behavior months after the Consent Judgment was ordered."  *Sportco*, Inc., 2015 WL 3915618, at *3.

Accordingly, the Court finds that Defendants failed to diligently comply with the Consent Judgment.  *GMA Accessories, Inc.*, 2008 WL 2355826, at *9.

### IV.  CONCLUSION

Pursuant to 28 U.S.C. § 636(e)(6)(B), the Court certifies the facts set forth herein and orders the Defendants to appear before the Honorable Rachel P. Kovner at a date certain to show cause why they should not be adjudged in contempt of the Consent Judgment entered on January 14, 2021.

**SO ORDERED.**

Brooklyn, New York
September 30, 2023

/s/Marcia M. Henry
MARCIA M. HENRY
United States Magistrate Judge